IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA
   *Plaintiff*,

     v.

DANIEL BLUE
   *Defendant.*

Criminal No.: ELH-19-286

**MEMORANDUM**

This Memorandum resolves a "Motion for Review of Detention Order or Request to Return Defendant to the Jurisdiction" filed by defendant Daniel Blue.  ECF 660 (the "Motion"). He is currently detained at the Northern Neck Regional Jail ("NNRJ") in Warsaw, Virginia.

In particular, Blue challenges the ruling of U.S. Magistrate Judge Beth P. Gesner on March 31, 2020 (ECF 413), denying reconsideration of a detention order previously issued by Judge Gesner on July 8, 2019.  ECF 193.  The government opposes the Motion (ECF 668).  Blue has not replied.  *See* Docket.  The Court also reviewed the report previously prepared by U.S. Probation and Pretrial Services concerning the defendant (the "Report"), dated July 8, 2019, which was prepared for the defendant's first detention hearing.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.[1]  For the reasons that follow, I shall deny the Motion.

---

[1] Although the Bail Reform Act does not address whether a defendant is entitled to an in-court hearing on an appeal of detention, Judge Grimm has found "ample authority for the conclusion that the Court may decide the motion on the filings . . . as opposed to a hearing." *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020).

# I.      Procedural Background

A federal grand jury indicted Blue on June 11, 2019.  ECF 23.  A Superseding Indictment was returned on June 25, 2019, naming 25 defendants.  ECF 96.  According to the government, the prosecution is the product of a wiretap investigation, and the defendant is "a lead defendant." ECF 668 at 1.

Blue is charged with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 28 U.S.C. § 846 (Count One), and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c) (Count Three). ECF 96.  In particular, Count One alleges that the conspiracy involved at least one kilogram of "a mixture or substance containing a detectable amount of heroin"; fentanyl; at least five kilograms of "a mixture or substance containing a detectable amount of cocaine"; and at least 280 grams of "a mixture or substance containing a detectable amount of cocaine base."  *Id.* at 3.[2]  Count One carries a sentence ranging from a minimum of ten years of imprisonment to life imprisonment.

The defendant was arrested on July 2, 2019.  ECF 177.  That day, Magistrate Judge Stephanie A. Gallagher (now a U.S. District Court Judge) ordered the defendant temporarily detained and scheduled a detention hearing for July 8, 2019.  ECF 170.

Judge Gesner presided at the detention hearing on July 8, 2019.  ECF 193.  She determined that the government was entitled to a presumption of detention under 18 U.S.C. § 3142(e), in light of the charges in the Superseding Indictment, and that Blue had not rebutted this presumption.  *Id.*  Further, applying the factors set forth in the Bail Reform Act, 18 U.S.C. § 3142(g), Judge Gesner found by clear and convincing evidence that no condition or

---

[2] Case ELH-20-288, filed on September 2, 2020, is a related case.  There, the defendant is charged with possession of a firearm and ammunition by a prohibited person on January 8, 2019, in violation of 18 U.S.C. § 922(g)(1).  *See id.*, ECF 1.

combination of conditions would reasonably assure the safety of the public. *Id.* Judge Gesner specified that in making her findings she considered, among other things, the nature of the charged offenses, including possession of a firearm; Blue's role in the offenses; and Blue's criminal history, which includes multiple narcotics convictions and one or more violations of supervised release. *Id.*

Accordingly, Judge Gesner entered an Order of Detention, pursuant to 18 U.S.C. § 3142. *Id.* Blue was remanded to custody and detained at the Chesapeake Detention Facility. *See id.*; ECF 660 at 3.

On March 23, 2020, Blue filed a "Motion for Review of Detention by Agreement." ECF 404. The defendant sought a new detention hearing and release on "24/7" home confinement in the custody of his mother, claiming that he is not a flight threat or a danger to the community. *Id.* at 2. In particular, the defendant asserted that although he was indicted along with twenty-four codefendants on a drug conspiracy charge, when law enforcement executed a search at a "residence associated with" Blue, "no drugs, drug paraphernalia or other indicia of drug distribution" were recovered." *Id.* Further, the defendant stated that he "is not a 'career offender' [or] an 'armed career criminal.'"

In support of Blue's contention that he is not a flight threat, he asserted that he had recently spent six months on pretrial release on a State charge without incurring any infractions; that charge was dismissed in lieu of federal prosecution. *Id.* at 1. And, Blue added that he was "concerned of the potential impacts of the current health crisis and the impact it could have at the jail." *Id.* The government opposed the motion. ECF 410.

Judge Gesner denied Blue's motion in a Memorandum and Order docketed on March 31, 2020. ECF 413. She explained, *id.* at 1:

Pursuant to 18 U.S.C. § 3142(f), "a detention hearing may be reopened if the 'judicial officer finds that information exists that was not known to the movant at the time of the [detention] hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

Judge Gesner determined that Blue's motion did not warrant a reopening of the detention hearing under the § 3142(f) standard because it did "not present any new or additional facts that have a material bearing on the issue of detention." *Id.* at 2. The Order of Detention, Judge Gesner noted, was issued after "consideration of all relevant options." *Id.* Additionally, Judge Gesner stated that the "only new information provided by the defendant in his Motion is his boilerplate statement that he is 'concerned of the potential impacts of the current health crisis and the impact it could have at the jail.'" This general statement was not accompanied by any specific facts, "thus preventing the court from conducting the requisite individualized determination required by the Bail Reform Act." *Id.*

This Motion followed on August 19, 2020. ECF 660. For the most part, the Motion restates the arguments made in the previous "Motion for Review of Detention by Agreement." *See* ECF 404; ECF 413. However, the defendant also requests, as an alternative to pretrial release, that he be detained in this jurisdiction pending trial. ECF 660 at 2-3. Further, the Motion states, *id.* at 3:

> When initially detained in the present case, Mr. Blue was detained at the Chesapeake Detention Facility. Several months ago, without warning Mr. Blue was removed from Chesapeake Detention Facility and transported to Northern Neck Regional Jail in Warsaw, Virginia. This facility is located approximately two and a half hours from the courthouse in Baltimore. Mr. Blue was not charged with infractions within "CDF." It is counsel's understanding that the transfer was initiated by of the US Attorney's Office after alleged complaint(s) from codefendant(s). Mr. Blue's location in Warsaw, Virginia makes in person trial preparation extremely difficult.

In response to the request to be returned to the Chesapeake Detention Facility, the government states in its Opposition that Blue was transferred to NNRJ "as a result of complaints

-4-

that the defendant was intimidating codefendant(s) in this case regarding their plea posture." ECF 661 at 2.

## II.    Standard of Review

Ordinarily, a defendant should not be detained pending trial. *See United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."); *accord United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The Bail Reform Act (the "Act"), 18 U.S.C. § 3141 *et seq*., governs the release or detention of a defendant pending trial.

The government may move for a defendant's pretrial detention where, as here, the case involves an offense punishable by a term of imprisonment of ten years or more pursuant to the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* 18 U.S.C. § 3142(f)(1)(C); *see* 21 U.S.C. § 846 (penalty for conspiracy); § 841(b) (penalties for distribution or possession with to distribute quantities of heroin, cocaine, and cocaine base relevant here). If the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1).

"In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). The test is disjunctive; a finding on either ground compels the defendant's detention. *See Salerno*, 481 U.S. at 754-55. But, the burden of proof differs; the government must establish that a defendant is a flight risk by a preponderance of the evidence, whereas the defendant's danger to the community must be proven by clear and convincing evidence. *See United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

In deciding whether detention is necessary, the court "is not given unbridled discretion." *Salerno*, 481 U.S. 742.  Rather, the Act directs the court to "take into account the available information concerning" four factors.  18 U.S.C. § 3142(g).  Those factors include, *id.*:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3)  the history and characteristics of the person, including—

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

Of relevance here, when the defendant is charged with certain crimes there is a presumption in favor of detention.  Specifically, the Act creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community if . . . there is probable cause to believe that the person committed" one of an enumerated list of crimes, including various offenses concerning controlled substances punishable by a maximum term if imprisonment of ten years or more.  18 U.S.C. § 3142(e)(3)(A).  For purposes of making that determination, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged."  *Stone*, 608 F.3d at 945; *see United States v. Sheikh*, 994 F. Supp. 2d 736, 739 (E.D.N.C. 2014).

-6-

Once triggered, "the burden of production shifts to the defendant to come forward with evidence to suggest that the presumption is unwarranted in his or her particular case." *United States v. Boyd*, 484 F. Supp. 2d 486, 488 (E.D. Va. 2007); *see also United States v. Khusanov*, 731 F. App'x 19, 21 (2d Cir. 2018); *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018). To do so, the defendant must proffer "at least some evidence" or basis to conclude that the case falls "outside 'the congressional paradigm'" giving rise to the presumption. *Ston*e, 608 F.3d at 945-46 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)). If the defendant offers evidence to counter the presumption, it does not fall out of the picture entirely but rather remains a factor in the court's totality-of-the-circumstances analysis. *See Khusanov*, 731 F. App'x at 21; *Stone*, 608 F.3d at 945; *Taylor*, 289 F. Supp. 3d at 64.

Section 3142(i) of 18 U.S.C. provides a distinct statutory basis for pretrial release. Under § 3142(i), the court may "permit the temporary release of [a] person" to "the custody of a United States marshal or another appropriate person," if the court determines that pretrial release is "necessary for preparation of the person's defense or for another compelling reason." As other courts have observed, claims predicated on § 3142(i) have historically involved claims that release was necessary for the preparation of the defendant's defense or where the defendant suffered from a serious medical condition. *See, e.g.*, *United States v. Clark*, 448 F. Supp. 3d 1152, 1155-56 (D. Kan. 2020); *United States v. Stephens*, 447 F. Supp. 3d 63, 65-67 (S.D.N.Y. Mar. 19, 2020).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See Stephens*, 2020 WL 1295155, at *3. Notably, courts have invoked § 3142(i) parsimoniously and only for truly extraordinary circumstances. *Compare United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993) (granting temporary release where the defendant

had sustained a gunshot wound to the head and would "shortly die" from AIDS), *with United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (denying temporary release where the defendant disclosed that he had a hernia but did not explain why correctional authorities could not capably provide treatment).  In the context of the COVID-19 pandemic, the Fourth Circuit has suggested that § 3142(i) requires evaluating whether "the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, . . . balanced against the other Bail Reform factors, rises to the level of a 'compelling reason'" justifying release.  *United States v. Creek*, CCB-19-36, App. No. 20-4251, at *1 (4th Cir. Apr. 15, 2020); *see id.* at ECF 402.

Of import here, the Act provides that a defendant "ordered detained by a magistrate judge, . . . may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order," and "the motion shall be determined promptly."  *Id.* § 3145(b).  The district court reviews the magistrate judge's ruling *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release."  *Stewart*, 19 F. App'x at 48.  In particular, the court must determine whether there are conditions of release that will reasonably assure the safety of the community.  In undertaking this examination, the court "'is free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons.'"  *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C. 2011) (citation omitted).

### III.    Discussion

In the Motion, Blue does not specify the statutory basis on which he relies to seek reconsideration of his detention.  *See* ECF 660.  Therefore, I construe the Motion as a request for review under 18 U.S.C. § 3145(b).

Blue does not pinpoint any error in Judge Gesner's ruling or seriously dispute the presumption of detention.  With respect to his request for release, he advances almost entirely the same summary arguments as those he presented to Judge Gesner in his previous request for release.  Having considered the relevant factors, I find that no condition or combination of conditions of release would reasonably assure the safety of the community pending trial.  Further, I conclude that the current COVID-19 pandemic does not warrant Blue's release.

First, I agree with Judge Gesner that Blue poses a danger to the community if released.  Blue is charged with conspiracy to distribute and possess with intent to distribute controlled substances (Count One) and possession of a firearm in furtherance of drug trafficking (Count Three).  ECF 96.  Count One alleges the manner and means of the conspiracy.  *Id.* at 4.  In particular, the Superseding Indictment alleges that the conspiracy involved the distribution of "heroin, fentanyl, cocaine, and crack cocaine to customers," and that "[m]embers of the conspiracy conducted narcotics sales on a daily basis, operating in rotating shifts to ensure continuous distribution."  *Id.*  Moreover, the conspiracy's members "sold bulk quantities of narcotics to other drug traffickers who, in turn, redistributed the narcotics in and around Baltimore."  *Id.*  Count Three alleges that Blue knowingly possessed a .45 caliber/410 revolver and a .45 caliber semi-automatic pistol in furtherance of the drug crime alleged in Count One.  *Id.* at 96.

These are undoubtedly serious offenses.  Indeed, Congress deemed these acts so serious that it established a statutory presumption in favor of pretrial detention.  18 U.S.C. § 3142(e).  Significantly, Blue has put forth no evidence to rebut the presumption that his release will not endanger the community.  Instead, he contends that the government's wiretap evidence for his participation in the conspiracy indicates "at worst" that he participated in "calls that can be

interpreted as drug related." ECF 660 at 2. In addition, Blue emphasizes that law enforcement did not recover any drugs or indicia of drug distribution from the "residence associated with Mr. Blue" during an execution of a search and seizure warrant. *Id.* These arguments go to the weight of the government's evidence; they do not rebut the presumption in favor of pretrial detention  that applies here.

But, even assuming, *arguendo*, that Blue has rebutted the presumption in favor of his detention, the analysis under § 3142(g) would lead to the same result. To be sure, Blue, who is either 38 or 39, has strong ties to the community. According to the Report, he has lived in Maryland for his entire life. He has a sibling as well as two children, ages 8 and 17, who live in Baltimore. And, his mother, with whom he lived from 2015 until his arrest, also lives in Baltimore.

Blue's criminal history was one of the factors that the Pretrial Services Officer considered in recommending detention. In particular, in 2006, when Blue was 23, he was convicted in federal court of distribution of crack cocaine and sentenced by Judge Blake to 60 months of incarceration, followed by 48 months of supervised release. *See* CCB-05-0572. He violated his supervised release in 2013.[3]

The Report also noted that Blue has a history of substance abuse, poor adjustment to pretrial services supervision (as demonstrated by a violation of supervised release), and substance abuse history. Altogether, Blue's prior interaction with the criminal justice system, which includes several arrests, signals that he poses a safety risk to the community and is a poor candidate for release.

---

[3] Although defendant was convicted of a second federal offense in 2011, the Fourth Circuit vacated the conviction. *See* ELH-11-0508.

Moreover, Blue's concern about the pandemic does not establish grounds for pretrial release. The Motion references the COVID-19 pandemic in a single sentence, stating that "Blue is concerned of the potential impacts of the current health crisis and the impact it could have at the jail." ECF 660 at 2.

To be sure, like other judges in this district, I recognize the unique threat posed by the COVID-19 pandemic, the worst health crisis that the world has experienced since 1918. *See United States v. Khalil Shaheed*, CCB-19-526, ECF 32 (D. Md. Apr. 20, 2020) (Boardman, M.J.); *United States v. Gray*, GJH-19-407, 2020 WL 1554392, at *1 (D. Md. Apr. 1, 2020); *United States v. Jefferson*, CCB-19-487, 2020 WL 1332011, at *1 (D. Md. Mar. 23, 2020); *United States v. Martin*, PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020). The virus is highly contagious; it spreads "easily and sustainably" from person-to-person. *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTR. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020), https://bit.ly/2XoiDDh. Asymptomatic carriers can spread COVID-19, and scientists estimate that the average infected person transmits the disease to between two and four others. *See* Jenny Gross & Mariel Padilla, *From Flattening the Curve to Pandemic: A Coronavirus Glossary*, N.Y. TIMES (Mar. 18, 2020), https://nyti.ms/3aW4yAI. The virus has claimed over 200,000 lives in the United States. *See Coronavirus Disease 2019 (COVID-19), Cases in the U.S.*, CTR. FOR DISEASE CONTROL & PREVENTION, https://bit.ly/2y6wfIq (last visited Apr. 23, 2020).

Correctional facilities are in general ill-suited to prevent outbreaks and mitigate their spread. *United States v. Goss*, 15-cr-769 (AJN), 2020 WL 1673244, at *1 (S.D.N.Y. Apr. 6, 2020); *United States v. Davis*, ELH-20-09, 2020 WL 1529158, at *5 (D. Md. Mar. 30, 2020). That said, the government takes care to describe extensively the protective measures that

management of NNRJ has taken.  *See* ECF 668 at 7-9.  As the government explains, NNRJ is a facility for federal pretrial detainees, managed by the State of Virginia pursuant to a contract with the U.S. Marshals Service.  *See id.* at 7 n.2.  The government states that it received information on the comprehensive precautionary measures that have been instituted at NNRJ from Ted Hull, the NNRJ Superintendent, and Sterling Johnson of the U.S. Marshals Service for the District of Maryland.  *Id.* at 7 n.3.  Further, the government reports that the safety measures at NNRJ include a quarantine protocol for new detainees; temporary suspension of visitation; new screening and monitoring procedures; new quarantine and isolation protocol for detainees; a separate facility and greater monitoring of detainees with "with comorbidities or who are 55 years of age or older"; sanitation and social distancing protocols;  identification of detainees at low risk for release; contact tracing as needed; and particular screening measures for detainees who must make appearances in Court.  *Id.* at 7-9.

Notably, Blue does not raise any individualized reasons for concern about COVID-19. Simply put, the coronavirus is "not tantamount to a 'get out of jail free card.'"  *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. Mar. 24, 2020) (Day, M.J.).  Upon assessing the § 3142(g) factors in light of the pandemic, Blue's medical conditions and the circumstances at NNRJ do not outweigh the serious nature of Blue's alleged conduct, coupled with his prior record.  Accordingly, the pandemic does not serve as a "compelling reason" to grant Blue temporary release under § 3142(i).

I turn to Blue's request to be returned to detention in Maryland.  The defendant argues that his detention at NNRJ, which is "located approximately two and a half hours from the courthouse in Baltimore . . .  makes in person trial preparation extremely difficult."  ECF 660 at 3.  I am sympathetic to Blue's complaint.  But, 18 U.S.C. § 3142(i) requires that temporary

release be "*necessary* for the preparation of a defense."  (Emphasis added).  Here, defendant's location in Virginia is an inconvenience.  Moreover, the government's assertion that Blue was transferred for intimidating codefendants regarding their plea posture is, if true, worrisome.  And, in any event, it is not the province of the Court to designate a detention facility.  This is a matter for the U.S. Marshal.

### IV.    Conclusion

For the reasons stated above, I shall affirm Judge Gesner's Order (ECF 413).  Therefore, I shall deny Blue's Motion (ECF 660).

An Order follows, consistent with this Memorandum.


Date:   October 9, 2020                                     _____/s/_____
                                                                            Ellen Lipton Hollander
                                                                            United States District Judge